S. Martin Keleti (Bar # 144208)
KELETI LAW
E-mail: s.martin.keleti@gmail.com
9903 Santa Monica Boulevard, Suite 751
Beverly Hills, CA 90212-1671
Telephone: 323.308.8489

*Counsel for Plaintiffs and the Proposed class*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA SNEED and LISA RAAD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES, U.S.A., INC., a California corporation; TOYOTA MOTOR NORTH AMERICA, INC., a California corporation; and TOYOTA MOTOR CORPORATION, a Japanese corporation,<br><br>Defendants. | Case No.: 2:25-CV-03663<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. Breach of Implied Warranty;**<br>**2. Violations of NJCFA; and,**<br>**3. Violations of MASS. GEN. LAWS ch. 93A, §1, *et seq*.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs individually for themselves and on behalf of all persons who purchased or leased certain vehicles described *infra* and allege:

1.       This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiffs and class members are citizens of a state different than Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. Subject matter jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331. This Court has supplemental subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

2.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because

certain Defendants are incorporated in this district and state and are "at home" in this district, Defendants are residents of this district pursuant to 28 U.S.C. § 1391(c)(2) because they are subject to personal jurisdiction in this district. Also, venue is proper in this district pursuant to 18 U.S.C. § 1965.

3.     Plaintiffs and the class owned vehicles equipped with a uniformly defective heating ventilation air condition drain ("HVAC evaporator drain"). The HVAC evaporator drain hose is defectively designed and constructed with improper materials for various vehicles designed, manufactured, distributed, warranted, marketed, sold, and leased by Defendants under the brand names Lexus and Toyota. Class vehicles include but not limited to:

**Lexus vehicles:**

2011 - 2017 CT200H; 2013 - 2022 ES300H; 2007 - 2022 ES350; 2010 - 2022 GX460, RX350, RX450H; 2010 - 2012 HS250H; 2018 - 2019 LC500, LC500H, LS500, LS500H; 2012 LFA; 2007 - 2017 LS460; 2008 - 2016 LS600H; 2017 - 2021 NX200T, NX300, NX300H; 2022 NX250, NX350, NX350H, NX450H+; and, 2019 - 2022 UX200, UX250H.

**Toyota vehicles:**

2010 - 2019 4Runner; 2013 - 2019 Avalon HV; 2007 - 2019 Avalon, Camry, Camry HV; 2018 - 2019 C-HR; 2019 Corolla Hatchback; 2009 - 2019 Corolla; 2007 - 2014 FJ Cruiser; 2008 - 2019 Highlander, Highlander HV; 2009 - 2013 Matrix; 2016 - 2019 Mirai; 2012 - 2018 Prius C; 2010, 2012 - 2015 Prius PHV; 2017 - 2019 Prius Prime; 2012 - 2017 Prius V; 2010 - 2018 Prius; 2013 - 2014 RAV4 EV; 2006 - 2019 RAV4; 2011 - 2019 Sienna; 2009 - 2016 Venza; 2007 - 2018 Yaris; and, 2017 - 2018 iM.[1]

---

[1] "Class vehicles" are further defined as vehicles Defendants themselves identified as possessing the HVAC Defect (see ¶ 4, *infra*) including Lexus vehicles designated in Lexus Technical Service Informational Bulletin L-SB-0024-21 and Toyota vehicles designated in Toyota Technical Service Bulletin T-SB-0080-19 (including any future revisions encompassing additional vehicles in both bulletins) both entitled "HVAC Evaporator Drain Hose Clogged Due to Insect Intrusion." Class vehicles are

4.    This action is brought to remedy violations of law in connection with Defendants' design, manufacture, marketing, selling, warranting, and servicing of class vehicles. The HVAC evaporator drain hose in all class vehicles is susceptible to blockages caused by insects (the "HVAC Defect"). Both the design (including the absence of a duckbill drain, screen or similar existing anti-insect designs utilized in comparable vehicles) and materials' deficiencies (including the absence of an insecticide impregnated drain hose or insecticide hose tip) of the HVAC evaporator drain make it highly susceptible to damaging blockages caused by spider webs and other insect structures. The blockages prevent the water associated with a class vehicle's HVAC system from draining outside the class vehicle, causing the water to drain inside the passenger compartment. This passenger compartment leakage causes further complications including: (a) an accumulation of mold and mildew residue within the passenger compartment including on seats and in carpeting; (b) an odor within the passenger compartment that impedes on the comfort and enjoyment of the class vehicle; (c) making the class vehicle's passenger compartment unusable for its intended purpose; and, (d) creates safety issues caused by water and moisture shorting out electrical system components in the passenger compartment.

5.    Plaintiffs are informed and believe that the HVAC systems and the evaporator drain component are substantially similar from a mechanical engineering standpoint in all class vehicles. All class vehicles use the identical HVAC evaporator drain hose ARINIX® Tip insect repellant tip as discussed in Lexus Technical Service Information Bulletins ("TSIBs") and Toyota Technical Service Bulletins ("TSB") referenced in this complaint which indicates it is applicable to all of the vehicle models and model years identified as "class vehicles" in this Complaint.

6.    The HVAC Defect is the result of faulty design, improper materials and defective manufacturing. The existence of spiders and other nesting insects in all 50

---

substantially the same or similar with regard to the defective components, root cause issues and remedy.

states is a fact well-known to Defendants and has been well-known to Defendants long before the production of the class vehicles at issue herein. The solution, which is exceedingly less expensive than the costly repairs, is also well-known to Defendants and has been known long before the production of the class vehicles at issue here commenced. Unfortunately for Plaintiffs and the class members, Defendants concealed the insect intrusion issue, have not performed the necessary corrections in design or materials and have simply denied responsibility when the inevitable drain blockage causes extensive water damage to the class vehicle's interior. As a result of Defendants' material omissions, Plaintiffs and the class have been injured. Class vehicles are substantially the same or similar with respect to the defective components, root cause issues and remedy.

7. Because of the HVAC Defect, the HVAC evaporator drain is very susceptible to blockages from spider webs, other insect structures and similar foreseeable blocking issues that regularly occur. These blockages cause the HVAC evaporator drain to fail to properly drain HVAC condensation water to the outside of the class vehicle. This failure causes the HVAC water to drain into the passenger compartment of class vehicles. The leaking water creates electrical system damage and a moist, hospitable environment for the growth of bacteria, fungus, mold, and spores, which then are blown throughout the passenger compartment. This causes the air to have a foul, mildewy smell that is highly unpleasant and can cause respiratory problems and aggravate allergies.

8. The HVAC Defect is the result of improper and defective design and materials. For example, after Plaintiffs and class members complained to Defendants about the HVAC Defect, Defendants only then disclosed a materials-based solution— an evaporator drain hose with an insecticide tip—that could have easily been installed during manufacture and prevented interior damage caused by the HVAC Defect. Worse yet, Defendants make class members pay out-of-pocket for the ARINIX® hose tip for the HVAC evaporator drain and the damage caused by the HVAC Defect even

if class members' vehicles were under warranty at the time of the leak.

9.    The HVAC Defect inhibits class members' proper and comfortable use of their class vehicles and requires class members to pay for repeated temporary repair services for the HVAC evaporator drain due to the ongoing issues it has caused.

10.    Prior to the manufacture and sale of the class vehicles, Defendants knew of the HVAC Defect through sources available to Defendants, as demonstrated by the multiple TSIBs and TSBs prepared by Defendants and issued to their authorized dealers (who are authorized agents of Defendants by virtue of their relationship for purposes of sales publications, warranty administration and warranty repairs, warranty breach notice, class vehicle defect disclosures, service actions, recall repairs, *inter alia*); field inspections conducted by Defendants; warranty requests made by class vehicle purchasers and lessees; consumer complaints posted on public online vehicle owner forums and social media; previous recalls; industry knowledge; and other internal sources unavailable to Plaintiffs without discovery. Yet despite their knowledge, Defendants failed to disclose and actively concealed the HVAC Defect from class members and failed to provide the protective drain hose tip which was available to prevent insect nesting. Defendants conduct is akin to failing to install a full and leak-proof roof on a vehicle despite the knowledge of the inevitability of rain or other inclement weather which would intrude into the vehicle's interior.

11.    Defendants knew or should have known that the "solutions" they charged class members for were simple fixes that should have been performed by Defendants pre-purchase or at the very least, Defendants should have revealed the HVAC Defect to class members, who then could have paid for the fixes and prevented the more extensive damage the HVAC Defect causes within the passenger compartments of class vehicles, for which Defendants force class members to pay.

12.    Defendants failed to fix the HVAC Defect either preemptively by a materials fix or by providing a repair and fix under warranty for the HVAC Defect and have failed to reimburse class members for the costs associated with the HVAC

Defect.

13.     Further, Defendants failed to inform Plaintiffs and class members of the HVAC Defect and thus preventing Plaintiffs and class members from being able to rectify the HVAC Defect before it caused damage to class vehicles.

14.     As a result of Defendants' misconduct, Plaintiffs and class members were harmed and suffered actual damages, in that the class vehicles have manifested, and continue to manifest, the HVAC Defect, and Defendants have not provided a permanent remedy for their HVAC Defect. Plaintiffs and class members incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the HVAC Defect. Plaintiffs and class members did not receive the benefit of their bargain—namely, that they paid a price premium for class vehicles that they believed to be free from HVAC evaporator drain hose clogging and attendant damage due to the undisclosed HVAC Defect.

## PARTIES

### Plaintiff Lisa Raad

15.     Plaintiff Lisa Raad ("Raad"), at all relevant times, is and has been a resident and citizen of the City of Marshfield, Commonwealth of Massachusetts.

16.     Raad owns a 2019 Lexus NX 300, which was purchased new in or about December 2018, from Herb Chambers Lexus of Hingham, an authorized Lexus dealership in Hingham, Massachusetts.

17.     Raad's class vehicle was manufactured, sold, distributed, marketed, and warranted by Defendants.

18.     Raad purchased the class vehicle for her personal, family, and household use.

19.     Raad expected her class vehicle to be of good and merchantable quality and not defective. She had no reason to know, or expect, that her vehicle's HVAC evaporator drain was susceptible to blockages described in this complaint, nor was she aware from any source prior to purchase of the unexpected, extraordinary, and costly

maintenance steps Defendants suggest are necessary to prevent the development of mold. Had Raad known these facts, she would not have bought her class vehicle or would have paid substantially less for it.

20.     Raad first experienced water in her class vehicle's passenger compartment in or about October 2022, while the vehicle mileage was approximately 22,819 miles. The flooding experience created a moldy and musty smell in the vehicle interior and a substantially foul smell when the interior vents for the HVAC system were turned on.

21.     As a result of this condition, Raad brought her class vehicle to the Hingham authorized Lexus dealer at which time the authorized Lexus dealer's service representative admitted to Plaintiff that the blockage was the result of the improper design and materials used and that, had proper materials such as a HVAC evaporator hose with a protective insecticide tip, commonly known as an ARINIX® Tip, been used, the issue would not have occurred. Raad is informed and believes that the ARINIX® Tip costs approximately $30. Raad was quoted an installation price of approximately $175 which included the ARINIX® Tip.

22.     As a result of the HVAC Defect, Raad has suffered significant ascertainable loss, as she was quoted a price of approximately $9,136.32 to remedy the flooded passenger compartment interior water damage caused by the HVAC Defect. Although Raad's automobile insurance company covered a portion of the cost, Raad was required to pay approximately $1,000 as the deductible portion. Defendants failed to disclose the HVAC Defect which would have been material to Raad (as well as other Plaintiffs and the class). Had Defendants disclosed to Raad that class vehicles had the defective HVAC evaporator drain, or that she would have to pay for repairs/replacement of the HVAC Defect, she would not have purchased her class vehicle, or would have paid substantially less for it.

23.     At Herb Chambers Lexus, Raad requested that Defendants cover the cost of the repair under warranty. Defendants wrongfully refused to extend or cover the

damage under the warranty. Defendants' service representative at the authorized dealership admitted it happens so often that they were confident most of the repair cost would be borne by Plaintiff's insurance company.

**Plaintiff Lisa Sneed**

24.     Plaintiff Lisa Sneed ("Sneed") is a resident and citizen of Rockland County, State of New York.

25.     Sneed owns a 2021 Lexus RX350, which was initially leased new from DARCARS of Englewood, Inc., an authorized Lexus dealership located in Englewood, New Jersey in August of 2021. At the end of the 3 year lease, Sneed purchased the vehicle in August 2024.

26.     Sneed's class vehicle was manufactured, sold, distributed, marketed, and warranted by Defendants.

27.     Sneed purchased the class vehicle for her personal, family, and household use.

28.     Sneed expected her class vehicle to be of good and merchantable quality and not defective. She had no reason to know, or expect, that her vehicle's HVAC evaporator drain was susceptible to blockages described in this complaint, nor was she aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Defendants suggest are necessary to prevent the development of mold. Had she known these facts, she would not have bought her class vehicle or would have paid substantially less for it.

29.     Sneed first experienced water in her passenger compartment in November of 2024, while the vehicle mileage was approximately 21,424 miles. The flooding experience created a moldy and musty smell in the vehicle interior and a substantially foul smell when the interior vents for the HVAC system were turned on.

30.     Sneed was informed at that time by authorized Lexus dealer Prestige Lexus in Ramsey, New Jersey where she brought the vehicle, that the hose drain blockage was the result of the improper design and materials used, and that had proper

materials such as an HVAC evaporator drain hose with a protective insecticide tip
(commonly known as an ARINIX® Tip) been used, the issue would not have
occurred. Sneed is informed and believes that the ARINIX® Tip part costs
approximately $30.

31.    As a result of the HVAC Defect, Sneed suffered significant ascertainable
loss, as she was quoted a price of approximately $7,700 to remedy the flooded
passenger compartment interior water damage caused by the HVAC Defect. Although
Sneed's automobile insurance company covered a portion of the cost, Sneed was
required to pay $500 as the deductible portion.

32.    Defendants failed to disclose the HVAC Defect which would have been
material to Plaintiffs and the class. Had Defendants disclosed to Sneed that the class
vehicles had a defective HVAC evaporator drain, or that she would have to pay for
repairs/replacement of the HVAC Defect, she would not have purchased her class
vehicle, or would have paid substantially less for it.

33.    At Prestige Lexus, Sneed requested that Defendants cover the cost of the
repair under warranty. Defendants wrongfully refused to extend or cover the damage
under the warranty.

**Defendant Toyota Motor Corporation**

34.    Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation
with its principal place of business in Toyota City, Aichi, Japan.[2] TMC maintains a
statutory agent for service of process within the United States, pursuant to National
Highway Traffic Safety Administration regulations.

35.    Lexus is the luxury vehicle division of TMC, and has its principal place
of business in Nagoya, Japan. The Lexus brand is marketed in more than 90 countries
and territories worldwide and is Japan's largest-selling manufacturer of premium cars.
It has ranked among the 10 largest Japanese global brands in market value. TMC's

---

[2] http://en.wikipedia.org/wiki/Toyota

Lexus division has operational centers in Brussels, Belgium, and Plano, Texas.[3]

36.    TMC maintains an extensive dealer network in and throughout the United States. TMC maintains an extensive dealer network in and throughout this judicial district and the State of California and transports vehicles into the State of California for sale and lease to consumers, such as Plaintiffs and class members.

**Defendant Toyota Motor North America, Inc.**

37.    Defendant Toyota Motor North America, Inc. ("TMNA") is a corporation organized under the laws of the State of California. TMNA is a wholly owned subsidiary of TMC and is responsible for the sales and marketing, field inspections, and warranty responsibilities for TMC and its affiliated companies.[4] TMNA is the holding company for the sales, manufacturing, engineering, and research and development subsidiaries of TMC located in the United States. TMNA is in the business of designing, engineering, testing, validating, manufacturing, marketing, and selling Toyota and Lexus branded vehicles throughout the United States, including within the State of California, in which it is incorporated. TMNA is the parent company of Defendant TMS. While TMNA maintains its primary headquarters in Plano, Texas, it maintains substantial portions of its operations in California. A few examples follow:

A.    **TMNA Research & Development, Gardena, California.** TMNA's Research & Development, Gardena, is its research & development arm for North America, which is based in Gardena, California. Through TMNA R&D, Gardena, TMNA is engaged in the engineering design, vehicle evaluation, powertrain development & calibration, regulatory affairs, and alternative powertrain research for both its Toyota and Lexus vehicles manufactured or sold in North America.[5] TMNA maintains its R&D Gardena base of operations at 1630 West 186th Street, Gardena, CA 90248-3807. TMNA is the corporate parent of all relevant Toyota entities,

---

[3] https://en.wikipedia.org/wiki/Lexus
[4] *See* https://www.toyota.com/usa/operations/map/tcal
[5] https://www.toyota.com/usa/operations/map/ttc_gardena

including but not limited to Toyota Motor Manufacturing, Kentucky, Inc.; Toyota Motor Manufacturing, Indiana, Inc.; Toyota Motor Manufacturing Canada, Inc.; Toyota Motor Manufacturing Mississippi, Inc.; Toyota Motor Manufacturing, Texas, Inc.; Toyota Motor Manufacturing de Baja California; Toyota Financial Services; Toyota Motor Sales, U.S.A., Inc.; Toyota Motor Engineering & Manufacturing North America, Inc.; and Toyota Motor Credit Corporation.

**B.    Toyota Auto Body Company, Inc., California.** Almost 50 years ago, the Toyota Defendants opened their first manufacturing facility in the United States in Long Beach, California, referred to as the Toyota Auto Body Company ("TABC"). Ever since, TABC has been in the forefront of building the company's reputation for quality. Currently, with 300 team members, TABC is a primary supplier of parts for certain Toyota vehicles and components— everything from sheet metal to steering columns, from catalytic converters to sub-assemblies, and more— for use in its manufacturing operations in the U.S. and for export to Japan. TABC maintains its base of operations at 6375 North Paramount Boulevard, Long Beach, CA 90805.[6]

**C.    TMNA's Substantial Multi-Million Dollar Investment in Its Manufacturing Facilities in California.** TMNA recently announced it would invest $27 million on top of the $485 million spent to date to support an increase in TABC's production capabilities. Chris Reynolds, executive vice president, Corporate Resources, TMNA noted "Toyota's roots in California run deep" and "[t]his investment demonstrates our continued commitment to doing business in the Golden State, investing in our operations across the United States and building where we sell."[7]

**Defendant Toyota Motor Sales, U.S.A., Inc.**

38.    Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is a wholly owned

---

[6] https://pressroom.toyota.com/good-as-gold-tabc-the-can-do-plant-celebrates-50-years-of-success/
[7] https://pressroom.toyota.com/27-million-investment-to-expand-toyotas-long-beach-manufacturing-capabilities/

subsidiary of TMNA and is incorporated in in the State of California. Although its primary headquarters is located in Plano, Texas, it continues to have substantial operations in California. Upon information and belief, the sales materials disseminated throughout the United States to dealerships is created and designed in California. In addition, California is the state in which Toyota and Lexus vehicles manufactured elsewhere are shipped into the United States and TMS is integrally involved in the sales and distribution of those imported vehicles and materials from the port of entry to dealerships throughout the United States. In addition, TMS oversees the sales of Toyota and Lexus products in all 50 states through a network of over 1,200 Toyota dealers (of whom more than 900 also previously sold SCION vehicles) and over 200 Lexus dealers. California maintains the greatest number of authorized Toyota dealerships of any other state at 172 dealerships.[8] TMS is a wholly owned subsidiary of TMNA, which in turn, is a wholly owned subsidiary of TMC.

39.     TMS, through its Lexus division, is responsible for the marketing and sales of the class vehicles, including all advertising, communications with dealers about the class vehicles, and the maintenance and service of the class vehicles. It is also the warrantor for portions of the limited warranties offered by Defendants against defects in materials or workmanship which apply to all class vehicles sold or leased by authorized Toyota dealers in the United States, including Plaintiffs' class vehicles. That warranty's coverage is automatically transferred at no cost to subsequent vehicle owners.

40.     Given the early stage of this proceeding and the complex corporate intertwining of the defendants, Plaintiffs are unaware of the exact corporate structure and degree of each defendant's involvement with respect to the precise division of labor among TMC and its directly owned subsidiary TMNA, and indirectly owned subsidiary TMS. This information is exclusively in the defendants' hands. Generally,

---

[8]https://en.wikipedia.org/wiki/Toyota_Motor_Sales,_USA#:~:text=TMS%20oversees%20the%20sales%20of,other%20state%20at%20172%20dealerships.

although potentially not exclusively, TMC designed class vehicles, TMNA manufactured and assembled class vehicles, and TMS was responsible for sales and marketing. As such, the three Toyota entities named as defendants know "the who, what, when, where, and how" of their fraudulent conduct, which is set out in detail herein. For ease of reference, Plaintiffs refer to TMC, TMNA and TMS jointly and severally as "Defendants."

41. At all relevant times, TMC (itself and through its related entities) engaged in the business of designing, selling, manufacturing, marketing, distributing, servicing and warranting class vehicles.

42. TMC's Lexus division claims it is "committed to creating luxury automobiles which are and will be among the finest ever built anywhere in the world" and that "Lexus is equally committed to setting a new standard for extraordinary customer satisfaction throughout the ownership cycle."[9]

43. Upon information and belief, Defendants were responsible for the manufacture, materials, warranty and design of the class vehicles, including the defective HVAC evaporator drain.

44. Upon information and belief, Defendants, and at all relevant times had, the contractual right to exercise, and in practice has exercised, control over the design of class vehicles, the manner of class vehicles' marketing, the scope of written warranties, the scope of repairs in practice to be covered under warranty, and representations made and facts withheld from consumers and the public about the HVAC Defect. Lexus has been directly involved in assisting, directing, and handling of class Member complaints regarding the HVAC Defect.

## JURISDICTION

45. This Court has personal jurisdiction over Defendants because Defendants TMNA and TMS are incorporated in this State and are authorized to do business in this judicial district and in the State of California. TMC, TMNA and TMS conduct

---

[9] Sec.gov/Archives/edgar/data/1019849/000095012402000556/k66280ex10-24.txt

substantial business in the State of California, and some of the material conduct and omissions giving rise to the complaint, took place in California. In addition, each Defendant intentionally avails itself of the markets within California for the promotion, sale, marketing, and distribution of its vehicles, including the class vehicles, and conducts a substantial portion of its manufacturing in California and imports its vehicles manufactured elsewhere into the ports of entry located in California for further sale and distribution to its authorized dealership network in the United States, and maintain more authorized dealers in the State of California than any other state. The exercise of jurisdiction would comport with notions of fair play and substantial justice.

46.    Each of these facts independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice.

## APPLICABLE CONTROLLING LAW

47.    Plaintiffs request damages on behalf of themselves and proposed class members, pursuant to the New Jersey Consumer Fraud Act ("NJCFA"), Mass. Gen. Laws ch. 93A, §1, *et seq*. ("M.G.L. ch. 93A"), and based upon Defendants' common law breaches of warranty.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

48.    Plaintiffs bring this action for themselves and on behalf of proposed class members.

49.    As a result of the HVAC Defect, the HVAC evaporator drain hose in each of the class vehicles is susceptible to blockages from spider webs, other insect activity and miscellaneous debris. These blockages force condensed water created by operation of the class vehicle's HVAC system to drain into the class vehicle's passenger compartment. The accumulation of excessive undrained water results in damaged material components in the passenger compartment including the seat, carpeting and electrical components, compromising the comfort, safety and enjoyment

of class vehicle occupants, including class members, and requiring class members to pay substantial amounts of money for repairs.

50. In addition, the damp conditions promote the growth of allergens including mold and mildew in the passenger compartment which result in substantial safety and health issues. The repairs associated with fixing these interior components far exceed the cost associated with installing the appropriate HVAC evaporator drain protective tip.

51. Plaintiffs are informed and believe that a drain hose equipped with a protective insecticide tip or other appropriate hose design would prevent the drainage of accumulated evaporator water into the class vehicle's passenger compartment, thus preventing the damage that the accumulation of water from the drainage causes in the interior passenger compartment.

52. Defendants knew or should have known that the HVAC evaporator drain in class vehicles was defective in materials and design, and could cause water to drain into the passenger compartments of class vehicles.

53. The installation of an appropriate drainage hose during manufacture would have saved countless class members time and money spent on repairs associated with the HVAC Defect. Defendants knew of the HVAC Defect prior to sale or lease of class vehicles.

54. Prior to the manufacture and sale of the class vehicles, Defendants knew of the HVAC Defect through sources such as technical publications including but limited to existing industry knowledge, Technical Service Information Bulletins ("TSIBs"), Technical Service Bulletins ("TSBs") such as the TSIBs and TSBs discussed herein; field inspections by its personnel; internal review committees, complaints made on public forums and social media by Lexus vehicle owners; previous recalls; and other internal sources unavailable to Plaintiffs without discovery.

55. Further, despite their knowledge Defendants failed to inform Plaintiffs and class members of the HVAC Defect. Sharing this knowledge also could have saved

countless class members time and money spent on repairs associated with the HVAC Defect.

**Defendants' Service Bulletins Demonstrate Pre-Sale Knowledge of the HVAC Defect**

56.     Defendants' knowledge of the HVAC Defect is also evident in TSBs and TSIBs drafted and issued by Defendants concerning the HVAC evaporator drains in Toyota and Lexus vehicles, including class vehicles.

57.     For example, on April 28, 2014, Defendants, through TMS, issued TSB T-SB-0033-14 entitled "HVAC Evaporator drain Hose Clogged Due to Insect Intrusion" to alert its dealers that vehicles could "exhibit a condition where the HVAC Evaporator drain Hose has become obstructed with an insect nest. An insect repellent drain hose tip (ARINIX® Tip) is now available to help minimize future occurrences of this environmental condition. For some models, a new drain hose is required to properly fit the ARINIX® Tip." The bulletin indicated to its dealers that Toyota would not cover the installation of the ARINIX® Tip under warranty.

58.     Then, on May 12, 2014, Defendants through TMS (which listed the TSIB as coming from "Lexus, a division of Toyota Motor Sales, U.S.A.") issued a TSIB numbered L-SB-0018-14 for Lexus vehicles, and entitled "HVAC Evaporator drain Hose Clogged Due to Insect Intrusion." ("Lexus 2014 TSIB"). Similar to the earlier TSB for Toyota vehicles, the Lexus 2014 TSIB acknowledged that vehicles could experience the signature symptom of the "HVAC Evaporator drain Hose [becoming] obstructed with an insect nest." The Lexus 2014 TSIB advised dealers that "[a]n insect repellent drain hose tip (ARINIX® Tip) is now available to help minimize future occurrences of this environmental condition." Again, the bulletin indicated to its dealers that Defendants would not cover the installation of the ARINIX® Tip under warranty.

59.     The TSIB further instructed service centers that "[f]or some models, a new drain hose is required to properly fit the ARINIX® Tip." The ARNIX® Tip is an

insect repellent drain hose tip which costs approximately $30. Figure 1 below depicts the ARINIX® Tip, which appears as a white cap, at the end of the drain hose:



*Figure 1: ARINIX® TIP*

60.    On July 26, 2021, Defendants through TMS issued another Technical Service Information Bulletin L-SB-0024-21 (which listed the TSIB as coming from "Lexus, a division of Toyota Motor Sales, U.S.A.") - entitled "HVAC Evaporator drain Hose Clogged Due to Insect Intrusion" ("Lexus 2021 TSIB") which added coverage to Lexus models from model years 2018 through 2022, including Plaintiffs' class vehicles, and stated "Applicability has been updated to include 2018 – 2022 model year Lexus vehicles." Similar to the prior TSIBs, the Lexus 2021 TSIB bulletin indicated to its dealers that Defendants would not cover the installation of the ARINIX® Tip under warranty.

61.    Incredibly, despite stating that the prior referenced TSIBs were intended

to "minimize future occurrences of this environmental condition," Defendants neither added the ARINIX® Tip to the class vehicles at the factory, nor offered the ARINIX® Tip as an option for the $30 cost to be installed either at the factory or by the dealer or informed Plaintiffs or class members in any materials that the HVAC Defect existed and could be easily remedied with a $30 materials component.

**Defendants' Pre-Sale Knowledge of the HVAC Defect is also Demonstrated from a Prior Recall by Defendants.**

62.    Defendants also knew or should have known about the HVAC Defect from a 2013 recall of 870,000 vehicles with similar or identical insect blockage issues. In October of 2013, Defendants announced a recall of 870,000 model years 2012 and 2013 Toyota Camry vehicles. The recall concerned spider webs that were creating blockages in the HVAC system drainage tube causing water to drain into the passenger compartment and onto an airbag control module. The water was short circuiting the control module and causing unintended air bag deployment. The prior recall also serves as an admission that the HVAC Defect poses a safety defect and should be the subject of implied or express warranty coverage.

63.    The similar nature and large-scale recall which Defendants instituted in 2013 was further evidence of notice to the various Toyota entities that class vehicles which suffered from a similar condition, from the same time period, had similar issues.

**Defendants Knew of the HVAC Defect Based on Class Member Complaints on Public Online Forums.**

64.    Defendants monitor online bulletin boards and chat rooms of Toyota and Lexus vehicle owners on a regular and continuous basis in connection with both its social media outreach and in connection with its legal obligations under the TREADS Act requiring manufacturers to monitor safety issues and inform NHTSA within five (5) days of any safety issues it becomes aware of through that monitoring effort.

65.    In connection with the HVAC Defect, many class vehicle owners posted

complaints about the HVAC Defect on public online vehicle owner forums.

66.    The following is a small sampling of such complaints found on online forums including Facebook and Club Lexus[10]

i.    "My car is just 4 months old . I am getting water inside of it. The dealer on route 10 claims it is because of the sunroof drains getting clogged by the stuff from the tree. One person told me it is from spider web clogging it. The car has been with them for a week they cannot guarantee me it is not going to happen again." User Madbuyer August 2, 2016.

ii.    "My 2017 RX has water accumulating in the passenger side foot well. I live in the northeast and am dealing with a high volume dealership. I brought the vehicle into service and they informed me that there have been multiple issues (3 in the last 5 weeks). The story I was given by my service consultant was that spiders boro [sic] into the AC drainage plug causing it to clog and backing water up into the cabin. The accumulating water causes black mold to form with explains the odd odor. Their solution is to pull out all carpeting and padding and perform mold remediation." User jrcaputo October 13, 2017.

iii.    "I have had the same problem with my Lexus RX 2016. Bought in feb and had huge leak noticed in oct. Dealership has had my car for nearly 6 weeks - gave it back once with carpet still soaked. Says spider web clogged ac duct" User RM0104 November 18, 2016.

iv.    "I have a RX450H I recently noticed my floor mat on my [driver] and passenger side is wet. Is there anyone in this group that can shed some light why this is happening?" "Thanks everyone for your advice. The problem was the AC drain" Anil Etwaroo July 17, 2023.

v.    "Has anyone else had any issues with a 2022 RX350 with large amounts of water under the [passengers] carpet? The smell and amount of water is crazy. Dealership said it wasn't covered under warranty and to take it and have it detailed. They noted that a spider had made a nest in some tube!!" Douglas Hare July 15, 2023.

vi.    "I have an AC drain leak in my 2020 RX 350 on the passenger side floor. Seems to be happening to a lot of people. When I took it to the dealer, they gave me standard response which is, AC drain is clogged by a spider web and not covered under warranty but your will fix it with us!" Hyman Shana September 3, 2022.

67.    No later than 2014, and well prior to the production of class vehicles, Defendants were aware of the HVAC Defect causing issues for class members and owners of their Toyota and Lexus vehicles. In addition, Defendants were aware of the

---

[10] https://www.clubLexus.com/forums/rx-4th-gen-2016-2022/869775-water-inside-car-drain-clogged-merged-threads.html last visited August 22, 2023

HVAC Defect based on, *inter alia*, the following sources:

A.   TSIBs and TSBs serve as admissions of Defendants' knowledge of the blockages and flooding into the cabin caused by the defective materials and design;

B.   Knowledge that Toyota had a recall of more than 750,000 vehicles concerning HVAC evaporator drain hose blockages caused by insects;

C.   Numerous and consistent class vehicle owner complaints made on online vehicle owner forums and complaints to authorized Toyota and Lexus dealers and Defendants;

D.   Knowledge within the automotive industry dating back to the 1960s concerning debris and insect related HVAC evaporator and sunroof drain blockages causing passenger compartment water intrusion issues affecting electrical systems and causing mold; and,

E.   Internal testing done by Defendants over the past 50 years.

68.   Moreover, the large number and consistency of class member complaints describing the HVAC Defect's propensity to cause a moldy odor to emit from the air-conditioning vents underscores the fact that class members considered the HVAC Defect to be a material issue to the reasonable consumer, particularly as it caused additional and separate physical damage to the vehicle.

69.   Certain class members have raised this issue with the authorized Lexus and Toyota dealer service or general managers, who have admitted that Lexus and Toyota are aware that the problem occurs frequently and that Defendants know about the problem and prefer to handle it after the fact as a non-warranty "customer pay" item, rather than incur the cost of fixing the problem preemptively.

**The Applicable Warranties**

70.   Defendants sold class vehicles with a new vehicle "Basic Warranty" which included, among other warranties, protections to the vehicle's consumer purchaser and/or lessee against defects:

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Lexus. …The warranty is for

48 months or 50,000 miles, whichever occurs first." …Warranty repairs will be made at no charge for parts and labor.[11]

71.    Class vehicles were also sold subject to the implied warranty of merchantability and fitness for ordinary purposes.

**Defendants' Marketing of Class Vehicles and Concealment of the HVAC Defect**

72.    The warranty is provided directly to the consumer purchaser and/or lessee of the class vehicle as it runs with the vehicle and, alternatively, to the extent it is made to the authorized Lexus and Toyota dealer, it is understood and is the uniform custom and practice that the consumer end purchaser and/or lessee is the intended third party beneficiary of the warranty.

73.    Defendants represented to Plaintiffs and the class that the Parts Warranty "is in effect for 12 months, regardless of mileage … [and] Any repair or replacement that becomes necessary because of a defect in the service part is warrantable."

74.    Defendants' New Vehicle Basic Warranty and Parts Warranty cover the HVAC drain hose, which is the part alleged to be defective and causes the passenger compartment flooding and water damage. The HVAC drain hose has a materials and/or design defect. Defendants' implied warranty of merchantability and fitness also runs with class vehicles.

75.    Based on Plaintiffs' experiences and reports from other consumers, Defendants refused to cover repairs related to the HVAC Defect under either warranty, and instead requires class members pay out-of-pocket for these nonpermanent "fixes" of the HVAC Defect even if class members' vehicles were under the relevant warranty at the time. In addition, even if the failure is covered by the class Member's automobile insurance, class members are responsible for the deductible portion and must pay that out-of-pocket as well as incur the cost of delay and non-use of the vehicle as well as separate and independent physical damage to the

---

[11] Toyota class vehicles are covered by similar terms and durational warranty.

vehicle.

76.    Upon information and belief, Defendants knowingly manufactured and sold the class vehicles with the HVAC Defect, while willfully concealing the true inferior quality and sub-standard performance of the class vehicles' HVAC system.

77.    Defendants, particularly TMS and TMNA, directly market the class vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

78.    Defendants knew of the HVAC evaporator drain's inability to properly drain because they failed to add the ARINIX® Tip protector (or other drain hose intrusion remedies) knowing the HVAC evaporator drain hose commonly becomes blocked without the ARINIX® Tip protector. Defendants knowingly concealed from Plaintiffs and class members the HVAC Defect which was a material defect, prior to their respective purchases of their class vehicles. This caused Plaintiffs and class members to form a reasonable belief and expectation that this issue would not emanate from class vehicles' HVAC system and certainly caused the reasonable consumer not to expect that the vehicle itself would become flooded and physically damaged, resulting in the growth of organic materials regularly giving rise to foul odors, making the use of class vehicles anything but marketable.

79.    Plaintiffs and class members were exposed to the long-term, national, multimedia marketing campaign of Defendants, particularly TMNA and TMS, touting the supposed high quality and marketability of the class vehicles, and class members justifiably made their decisions to purchase and/or lease their class vehicles based on said Defendants' misleading marketing that concealed the true defective nature of the class vehicles' HVAC Defect. In particular, the material information concerning an HVAC Defect was not adequately disclosed in any sales documents, in-dealership sales brochures, displays, printed and internet advertisements, warranties, owner's manual, on Defendants' website or at the point of sale at the respective authorized

dealerships or earlier, and scripts or instructions disseminated to Defendants'
authorized dealer sales force.

80.    Defendants knowingly misled class members (who were reasonable
consumers) about the true defective nature of the class vehicles. As detailed above,
Defendants have been aware of the HVAC Defect no later than 2014, through TSIBs,
TSBs, the high number of HVAC evaporator drain servicing and replacement
component part sales, and the numerous and consistent complaints about the HVAC
Defect made and posted in public online forums.

81.    Defendants actively concealed the existence and nature of the HVAC
Defect from class members despite their knowledge of the existence and
pervasiveness of the HVAC Defect, and certainly well before Plaintiffs and class
members purchased or leased their respective class vehicles. Specifically, Defendants
have:

A.    Knowingly concealed from class members, prior to, at and after the time
of purchase, lease, and/or service, of the class vehicles, the presence and
existence of the HVAC Defect;

B.    Knowingly concealed from class members prior to, at and after the time
of purchase, lease, and/or service, that the class vehicles' HVAC
evaporator drain was defective and was not fit for its intended purposes;

C.    Knowingly concealed the fact that the class vehicles' HVAC evaporator
drain was defective, despite the fact that Defendants learned of the
HVAC Defect no later than 2014, based on the multiple TSIBs and TSBs
to authorized dealerships issued by Defendants TMNA and TMS;

D.    Knowingly concealed the existence and pervasiveness of the HVAC
Defect even when directly asked about it by class members during
communications with Lexus and Toyota Customer Assistance and
authorized dealerships;

E.    Actively concealed the HVAC Defect to induce class members to bear the

cost of repairs;

F.    Actively concealed the material HVAC Defect by knowingly omitting to reveal that a preventative material replacement, e.g., the ARNIX® Tip protector for the HVAC evaporator drain hose existed and could have been installed, thereby preventing the hose blockages from occurring and reoccurring because the HVAC evaporator drain hose otherwise remained defectively designed and/or lacking in the proper and necessary material installation.

82.    By engaging in the conduct described above, Defendants concealed, and continue to conceal, the material HVAC Defect from class members. Plaintiffs and all class members have been injured because, if Plaintiffs and the class members had knowledge of the information, they would not have bought or leased the class vehicles or would have paid less for them.

**Fraudulent Concealment and Material Omission Allegations**

83.    Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals related to Defendants responsible for disseminating false and misleading marketing materials and information regarding the class vehicles. Defendants are necessarily in possession of or have access to all of this information. Plaintiffs' claims arise out of Defendants' knowing material omission and/or concealment of the HVAC Defect. Plaintiffs and class members allege that at all relevant times, including specifically at the time they purchased or leased their class vehicles, Defendants knew, or were reckless in not knowing, of the HVAC Defect. Defendants were under a duty to disclose the HVAC Defect based upon its exclusive knowledge of it, its affirmative representations about it, and its concealment of it. Defendants failed to disclose the HVAC Defect to the Plaintiffs and class members or the public at any time or place or in any manner.

**The who, what, when, where, how and why of Defendants' Fraudulent Conduct**

84.     Plaintiffs and class members make the following specific fraud allegations with as much specificity as possible given they currently lack access to information necessarily available only to and peculiarly within the knowledge of Defendants:

85.     **Who**: Defendants (and particularly TMS, which prepared advertising materials and specifications for class vehicles and its agents who operated authorized Lexus dealerships which sold class vehicles directly to consumers) actively concealed the HVAC Defect which was material to purchasers and affected class vehicle value, from Plaintiffs and class members while simultaneously touting the comfort and quality of the class vehicles, as alleged above. Plaintiffs and class members are unaware of, and therefore unable to identify, prior to discovery, the true names and identities of specific individuals related to Defendants who are responsible for such decisions, as alleged above except to state that these decisions were made by executives in the marketing and engineering divisions of Defendants.

86.     **What**: Defendants knew that the class vehicles incorporated the HVAC Defect and as a result of the HVAC Defect, having the blockage occur in the evaporator drain pipe, would result in accumulation of water in the vehicle cabin causing significant damage to components and resulting in serious safety issues. Defendants (and particularly TMS and its agents who operated authorized Lexus and Toyota dealerships which sold class vehicles directly to consumers) knowingly concealed the HVAC Defect and also made contrary representations about the comfort and quality of the class vehicles, as specified above in paragraphs above. Defendants used their superior knowledge to defraud the Plaintiffs by omitting material information concerning the HVAC Defect particularly since they were aware of the defect prior to the commencement of class vehicle sales.

87.     **When**: Defendants concealed material information regarding the HVAC

Defect at all times and made representations about the quality of the class vehicles, starting no later than 2014 (or prior to the introduction of certain earlier models of class vehicles to the market), continuing through the time and point of sale/lease, and on an ongoing basis, and continuing to this day, as alleged *supra.* Defendants have never taken any action to disclose to consumers the HVAC Defect in class vehicles in either advertising viewed by Plaintiffs/class members or at the place and point of sale at authorized Lexus or Toyota dealers who acted as agents for the Defendants. When consumers brought their class vehicles to authorized Lexus or Toyota dealerships complaining of the HVAC Defect, the dealers only then admitted that Defendants were aware of the HVAC Defect but denied any responsibility for bearing the cost of repairing the HVAC Defect. With regard to each Plaintiff, Defendants concealed and materially omitted the HVAC Defect prior to the time they experienced a loss as a result of the HVAC Defect, which in the case of Sneed, was October 2024; in the case of Raad was October 2022.

88.    ***Where:*** Defendants (and particularly TMS which prepared advertising materials and specifications for class vehicles and its agents who operated authorized Lexus and Toyota dealerships which sold class vehicles directly to consumers) concealed material information regarding the true nature of the HVAC Defect in every communication they had with Plaintiffs and class members and made contrary representations about the quality of the class vehicles. In particular, the material information concerning an HVAC Defect was not adequately disclosed in any sales documents, in-dealership sales brochures, displays, printed and internet advertisements, warranties, owner's manual, on Defendants' website or at the point of sale or earlier, and scripts or instructions disseminated to Defendants' authorized dealer sales force. These material omissions and concealment occurred in the case of Raad in the Commonwealth of Massachusetts and in the case of Sneed, in the State of New Jersey.

89.    ***How:*** Defendants (and particularly TMS which prepared advertising

materials and specifications for class vehicles and its agents who operated authorized Lexus and Toyota dealerships which sold class vehicles directly to consumers) materially omitted and concealed the HVAC Defect from Plaintiffs and class members and made representations about the quality of the class vehicles as discussed, *supra*. Defendants actively concealed the truth about the existence and nature of the HVAC Defect from Plaintiffs and class members at all times, even though they knew about the HVAC Defect and knew that information about the HVAC Defect would be materially important to a reasonable consumer and Defendants failed to identify the HVAC Defect in any and all class vehicle marketing materials, sales brochures and/or at the time and point of sale.

90.     **Why:** Defendants (and particularly TMS which prepared advertising materials and specifications for class vehicles and its agents who operated authorized Lexus and Toyota dealerships which sold class vehicles directly to consumers) actively concealed and/or intentionally omitted material information about the HVAC Defect in class vehicles for the purpose of inducing Plaintiffs and class members to purchase or lease their class vehicles at premium prices charged, rather than purchasing or leasing competitors' vehicles and made representations about the world-class quality of the class vehicles. Had Defendants disclosed the truth, for example in its advertisements or other materials or communications, or at the point of sale, Plaintiffs (and reasonable consumers) would have been aware of it, and would not have bought class vehicles or would have paid less. In addition, Defendants' dealerships revealed to certain class members that Defendants were well aware of the HVAC Defect but preferred to address it only after it materialized, and the passenger compartments of vehicles were flooded because it was less expensive for Defendants to handle it that way and pass the cost and aggravation onto the class members.

## TOLLING OF THE STATUTES OF LIMITATIONS

### Fraudulent Concealment Tolling

91.     Defendants have known of the HVAC Defect in the class vehicles no

later than 2014, and concealed from or failed to notify Plaintiffs, class members, and the public of the full and complete nature of the HVAC Defect, even when directly asked about it by Plaintiffs and class members during communications with Defendants, Lexus and Toyota Customer Assistance and authorized Lexus and Toyota dealerships. Defendants continue to conceal the HVAC Defect to this day.

92.     Any applicable statute of limitation has been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

**Estoppel**

93.     Defendants were and are under a continuous duty to disclose to Plaintiffs and class members the true character, quality, and nature of the class vehicles. Defendants actively concealed – and continue to conceal – the true character, quality, and nature of the class vehicles and knowingly made misrepresentations about the quality of the class vehicles. Plaintiffs and class members reasonably relied upon Defendants' knowing and affirmative representations and/or active concealment of these facts as alleged herein. Based on the foregoing, Defendants are estopped from relying on any statute of limitation in defense of this action.

**Discovery Rule**

94.     The causes of action alleged herein did not accrue until Plaintiffs and class members discovered that their class vehicles incorporated the HVAC Defect.

95.     In the case of Sneed, that occurred in or about November 2024, when her interior passenger compartment flooded and she brought her class vehicle in for an appointment at an authorized Lexus dealer, at which point she was given the diagnosis of an insect blockage and given the estimate of approximately $7,700 to repair the interior, and was refused warranty coverage.

96.     In the case of Raad that occurred in or about October, 2022 when her interior passenger compartment flooded and she brought the class vehicle in for an appointment at the dealer, at which point she was given the estimate of approximately

$9,136.32 to repair the passenger compartment, and was refused warranty coverage.

97.    Plaintiffs and class members had no realistic ability to discern that class vehicles were defective until—at the earliest–after the HVAC Defect caused their passenger compartments to fill with water and cause separate physical damage to their respective vehicle. Even then, Plaintiffs and class members had no reason to know the water in their passenger compartment was caused by a defect in the class vehicles because of Defendants' active concealment of the HVAC Defect. Plaintiffs and class members were not reasonably able to discover the HVAC Defect until after they had purchased or leased the class vehicles, despite their exercise of due diligence, and their causes of action did not accrue until, at earliest, they discovered that the HVAC Defect was causing their passenger compartments to become flooded.

## CLASS ACTION ALLEGATIONS

98.    Plaintiffs initiate this lawsuit as a class action on behalf of themselves and all other similarly situated individuals pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and/or 23(c)(4). Plaintiffs allege that the within action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions. Plaintiffs assert this class action on behalf of themselves and all other similarly situated members of the proposed class (the "class") and statewide subclasses, defined as follows:

**New Jersey Subclass:**

All purchasers or lessees of class vehicles who purchased a class vehicle in the State of New Jersey.

**Massachusetts Subclass:**

All purchasers or lessees of class vehicles who purchased a class vehicle in the Commonwealth of Massachusetts.

99.    "Class vehicles" are defined as a vehicle of any of the following models/model years which Defendants themselves identified as possessing the HVAC Defect including Lexus vehicles designated in Lexus Technical Service Informational

Bulletin L-SB-0024-21 and Toyota vehicles designated in Toyota Technical Service Bulletin T-SB-0080-19 (including any future revisions encompassing additional vehicles in both bulletins) both entitled "HVAC Evaporator Drain Hose Clogged Due to Insect Intrusion":

**Lexus vehicles:**

2011 – 2017 CT200H; 2013 – 2022 ES300H; 2007 – 2022 ES350; 2010 – 2022 GX460, RX350, RX450H; 2010 – 2012 HS250H; 2018 – 2019 LC500, LC500H, LS500, LS500H; 2012 LFA; 2007 – 2017 LS460; 2008 – 2016 LS600H; 2017 – 2021 NX200T, NX300, NX300H; 2022 NX250, NX350, NX350H, NX450H+; and, 2019 – 2022 UX200, UX250H.

**Toyota vehicles:**

2010 – 2019 4Runner; 2013 – 2019 Avalon HV; 2007 – 2019 Avalon, Camry, Camry HV; 2018 – 2019 C-HR; 2019 Corolla Hatchback; 2009 – 2019 Corolla; 2007 – 2014 FJ Cruiser; 2008 – 2019 Highlander, Highlander HV; 2009 – 2013 Matrix; 2016 – 2019 Mirai; 2012 – 2018 Prius C; 2010, 2012 – 2015 Prius PHV; 2017 – 2019 Prius Prime; 2012 – 2017 Prius V; 2010 – 2018 Prius; 2013 – 2014 RAV4 EV; 2006 – 2019 RAV4; 2011 – 2019 Sienna; 2009 – 2016 Venza; 2007 – 2018 Yaris; and, 2017 – 2018 iM.

100.   Excluded from the class are: (1) Defendants, and any entity or division in which Defendants or any of them have a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the judge to whom this case is assigned and the judge's staff; (3) governmental entities; and (4) claims for personal injuries resulting from the facts alleged herein. Plaintiffs reserve the right to amend the class definitions if discovery and further investigation reveal that the class should be expanded, divided into subclasses, or modified in any other way.

**Numerosity**

101.   Although the exact number of class members is uncertain and can only be ascertained through appropriate discovery, the number is in hundreds of thousands,

upon information and belief, such that joinder is impracticable. The disposition of the claims of these class members in a single action will provide substantial benefits to all parties and to the Court. Class members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by individual state motor vehicle departments.

**Typicality**

102.    The claims of Plaintiffs are typical of the claims of class members in that the Plaintiffs, like all class members, purchased and/or leased a class vehicle designed, manufactured, distributed, and sold by Defendants. Plaintiffs, like all class members, have been damaged by the misconduct of Defendants in that they have purchased a vehicle they would not have purchased, or for which they would have paid less, and incurred or will incur the cost and time spent for service and repair relating to and caused by the HVAC Defect. Furthermore, the factual bases of Defendants' misconduct are common to the Plaintiffs and all class members and represent a common thread of misconduct resulting in injury to the Plaintiffs and all class members.

**Adequate Representation**

103.    Plaintiffs will fairly and adequately represent and protect the interests of class members. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective automotive vehicles.

104.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the class.

**Predominance of Common Issues**

105.    There are numerous questions of law and fact common to Plaintiffs and class members, the answers to which will advance resolution of the litigation as to all class members, and which predominate over any individual question. These common

legal and factual issues include:

A. whether the HVAC evaporator drain in the class vehicles is defective;

B. whether Defendants knew or should have known about the HVAC Defect, and, if so, how long Defendants knew or should have known of the HVAC Defect;

C. whether the defective nature of the class vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a class vehicle;

D. whether Defendants had and/or have a duty to disclose the defective nature of the class vehicles to Plaintiffs and class members;

E. whether Defendants omitted and failed to disclose material facts about class vehicles;

F. whether Defendants' concealment of the true defective nature of class vehicles induced Plaintiffs and class members to act to their detriment by purchasing class vehicles;

G. whether Defendants represented, through their words and conduct, that class vehicles had characteristics, uses, or benefits that they did not actually have, in violation of the NJCFA and Mass. Gen. Laws ch. 93A;

H. whether Defendants represented, through their words and conduct, that the class vehicles were of a particular standard, quality, or grade when they were of another, in violation of the implied warranty, the NJCFA and M.G.L. ch. 93A;

I. whether Defendants advertised the class vehicles with the intent not to sell them as advertised, in violation of the NJCFA and M.G.L. ch. 93A;

J. whether the class vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

K. whether Plaintiffs and the other class members are entitled to a declaratory judgment stating that the HVAC evaporator drain in class

vehicles are defective and/or not merchantable;

L.    Whether Plaintiff and the class are entitled to damages based upon class-wide diminution of value, payment of a price premium and/or out-of-pocket damages;

M.    whether Defendants should be declared financially responsible for notifying class members of the problems with the class vehicles and for the costs and expenses of permanently remedying the HVAC evaporator drain HVAC Defect in the class vehicles; and,

N.    whether Defendants are obligated to inform class members of their right to seek reimbursement for having paid to diagnose, service, repair, or replace the defective HVAC evaporator drain.

**Superiority**

106.   Plaintiffs and class members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

107.   Absent a class action, most class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual class members' claims, it is likely that only a few class members could afford to seek legal redress for Defendants' misconduct. Absent a class action, class members will continue to incur damages, and Defendants' misconduct will continue without remedy.

108.   Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

**FIRST CLAIM FOR RELIEF**

**BREACH OF IMPLIED WARRANTY**

**(On Behalf of Massachusetts and New Jersey Plaintiffs against all Defendants**)

109.   Plaintiffs incorporate by reference each allegation set forth in paragraphs 1 through 108 as if set forth in full here. Paragraph 84 through and including paragraph 90, *supra*, are expressly incorporated herein with respect to the "who," "what," "when," "where," "how" and "why" concerning the knowing and actionable material omissions of Defendants with regard to the HVAC Defect.

110.   When Defendants sold the class vehicles, Defendants extended an implied warranty to class members that the class vehicles were merchantable and fit for the ordinary purpose for which such goods were sold.

111.   Persons who purchased a class vehicle from Defendants are entitled to the benefit of their bargain: a vehicle with a non-defective HVAC evaporator drain that properly drains water and does not allow HVAC condensation to drain into the passenger compartment.

112.   Defendants breached this implied warranty in that its class vehicles are: (1) not fit for ordinary use; and, (2) not of a merchantable quality.

113.   Had the fact that the HVAC Defect existed been disclosed at the time of sale, the class vehicles could not have been sold, or could not have been sold at the same price.

114.   To the extent reliance is required, reliance was present on the part of each Plaintiff and is presumed under the present circumstances.

115.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and class members have been damaged in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**

**VIOLATIONS OF NJCFA**

**(On Behalf of Sneed and the New Jersey Subclass against all Defendants)**

116.  Proposed New Jersey class representative Sneed and New Jersey Subclass members incorporate by reference each allegation set forth in paragraphs 1 through 108 as if set forth in full here. Paragraph 84 through and including paragraph 90, *supra*, are expressly incorporated herein with respect to the "who," "what," "when," "where," "how" and "why" concerning the knowing and actionable material omissions of Defendants with regard to the HVAC Defect.

117.  The NJCFA states in pertinent part as follows:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J.S.A. § 56:8-2.

118.  Defendants are each a "person" as defined by the NJCFA. N.J.S.A. § 56:8-1(d).

119.  The purchase or lease of class vehicles by Sneed and New Jersey Subclass Members constituted "merchandise" as defined by the NJCFA. N.J.S.A. § 56:8-1 and § 56:8-2.

120.  By knowingly concealing the defective nature of the class vehicles to Plaintiffs and class members, Defendants violated the NJCFA, because such information was a material fact that a reasonable consumer would want to know and the omission thereof was material to a reasonable consumer.

121.  Defendants represented that the class vehicles had characteristics and benefits that they do not possess, and represented that the class vehicles were of the

highest standard, quality, or grade when they were of another.

122.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm to owners and purchasers of the class vehicles.

123.    Defendants knew no later than 2014, that class vehicles' HVAC evaporator drain suffered from an inherent defect, would exhibit problems such water drainage into the passenger compartment of class vehicles, and class vehicles were not suitable for their intended use.

124.    By no later than 2014, Defendants had exclusive knowledge of material facts concerning the existence of the HVAC Defect in its class vehicles. Yet, Defendants actively concealed this HVAC Defect from consumers at and prior to the time of purchase and failed to offer class members a permanent solution to the HVAC Defect.

125.    Defendants were under a duty to Sneed and New Jersey Subclass members to disclose the defective nature of the HVAC evaporator drain, as well as the associated costs that would have to be expended in order to repair or replace the class vehicles interior carpeting and seating due to the HVAC Defect and the resulting additional and separate physical damage to the vehicle it caused.

126.    Defendants were in a superior position to know the true state of facts about the HVAC Defect in the class vehicles;

127.    Sneed and New Jersey Subclass members could not reasonably have been expected to learn or discover that the class vehicles had the HVAC Defect until, at the earliest, the first instance of the issue occurring.

128.    Defendants knew that Sneed and New Jersey Subclass members could not reasonably have been expected to learn or discover the HVAC Defect prior to its manifestation.

129.    Defendants knew or should have known that their conduct violated the

NJCFA.

130.    In failing to disclose the defective nature of the class vehicles, and/or denying and misleading as to the true cause and remedy of the water intrusion, noxious foul odor, and easy remedy, Defendants knowingly and intentionally concealed material facts and breached their duty to not do so.

131.    The facts Defendants concealed from Sneed and New Jersey Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease a class vehicle. Moreover, a reasonable consumer would consider the HVAC Defect to be an undesirable quality, as Sneed and New Jersey Subclass members did. If Sneed and New Jersey Subclass members had known that the class vehicles had the HVAC Defect, they would not have purchased or leased a class vehicle, or would have paid less for them.

132.    Plaintiffs and class members, like all objectively reasonable consumers, did not expect the HVAC evaporator drain to drain water into their passenger compartments and cause damage to carpets and seats.

133.    As a result of Defendants' misconduct, Sneed and New Jersey Subclass members have been harmed and suffered ascertainable damages and actual compensatory damages including that Plaintiffs and class members would not have purchased their vehicles for the price paid, or would not have purchased them at all had they known of the material HVAC Defect and as a result, paid an unconscionable, illegal and improper price premium which they would not have paid, diminution of value and payment of the cost of repairs.

134.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Sneed and New Jersey Subclass members suffered and will continue to suffer ascertainable losses in that they have experienced and may continue to experience their class vehicles' HVAC evaporator drain failing, resulting in water flooding into the passenger compartment of the vehicle causing physical damage, and for which they must pay out-of-pocket.

135.   Defendants' violations present a continuing safety risk to Sneed and New
Jersey Subclass members and to the general public. Defendants' unlawful acts and
practices complained of herein affect the public interest.

136.   Pursuant to N.J.S.A. § 56:8-2, Sneed and New Jersey Subclass members
request actual and statutory damages, attorneys' fees and expenses, treble damages,
and punitive damages as permitted under the NJCFA and applicable law.

**THIRD CLAIM FOR RELIEF**

**VIOLATIONS OF M.G.L. ch. 93A**

**(On Behalf of Plaintiff Raad and Massachusetts Subclass against all Defendants)**

137.   Proposed Massachusetts class representative Raad and Massachusetts
Subclass members incorporate by reference each allegation set forth paragraphs 1
through 108 as if set forth in full. Paragraph 84 through and including paragraph 90,
*supra*, are expressly incorporated herein with respect to the "who," "what," "when,"
"where," "how" and "why" concerning the knowing and actionable material
omissions of Defendants with regard to the HVAC Defect.

138.   The Defendants are persons within the context of M.G.L. ch. 93A, §1
and committed wrongful conduct set out in this complaint including conduct that
caused ascertainable financial harm and/or economic loss to Raad and proposed
Massachusetts Subclass members.

139.   The Defendants committed unfair and deceptive acts in the course of
trade and commerce within the context of M.G.L. 93A as described in this complaint
including but not limited to parallel violations of § 5 of the Federal Trade
Commission Act of 1914, 38 Stat. 719, *codified at* 15 U.S.C. §§ 41-58, *as amended*
and Mass. Regs. Code 940, §§ 3.05, 3.16 (1993).[12]

140.   The Defendants committed unconscionable commercial practices in the
course of trade and commerce within the context of M.G.L. 93A as described in this

---

[12] The Defendants also concurrently breached implied warranties of merchantability
which are violations of M.G.L. 93A.

complaint including but not limited to parallel violations of § 5 of the Federal Trade Commission Act of 1914, 38 Stat. 719, *codified at* 15 U.S.C. §§ 41-58, *as amended* and Mass. Regs. Code 940, §§ 3.05, 3.16 (1993).

141.    The Defendants violated Mass. Regs. Code 940, § 3.05 (1993) and M.G.L. 93A by their material misrepresentations, misleading statements and failure to fully disclose material information concerning the HVAC Defect as described in this complaint that had the capacity, tendency and/or effect of deceiving buyers of class vehicles.

142.    The Defendants violated Mass. Regs. Code 940, § 3.16(1) (1993) and M.G.L. ch. 93A with their oppressive and unconscionable conduct described in this complaint that caused ascertainable financial harm to Raad and proposed Massachusetts Subclass members.

143.    The Defendants violated Mass. Regs. Code 940, § 3.16(2) (1993) and M.G.L. ch. 93A by their conduct described in this complaint including but not limited to its failure to disclose material information concerning the HVAC Defect that caused ascertainable financial harm to Raad and proposed Massachusetts Subclass members.

144.    The Defendants violated Mass. Regs. Code 940, § 3.16(4) (1993) and M.G.L. ch. 93A with their violation of the Federal Trade Commission Act that caused ascertainable financial harm to Raad and proposed Massachusetts class members.

145.    The Defendants were under a duty to disclose material information concerning the HVAC Defect incorporated in class vehicles as described in this complaint but failed to disclose to Raad and proposed Massachusetts Subclass members the characteristics of class vehicles with respect to those defects in violation of both M.G.L. ch. 93A and Mass. Regs. Code 940, §§ 3.05, 3.16 (1993).

146.    The Defendants' representations and/or omissions concerning the HVAC Defect (including but not limited to the proposed class representatives and proposed class members) because it was not disclosed that the HVAC system was defective and

would cause flooding of the passenger compartment. This failure to disclose material information concerning class vehicle HVAC systems had the capacity to, and in fact deceived purchasers (including but not limited to Raad and proposed Massachusetts Subclass members) in a material respect.

147. If Raad and proposed Massachusetts Subclass members had been made aware of material information concerning the HVAC system and the attendant ramifications of vehicle operating costs and durability, they would not have purchased the class vehicles or would have paid less. Raad and proposed Massachusetts Subclass members were not fully informed of true characteristics attributes and nature of class vehicles at the time of purchase and thereafter until the HVAC Defect caused passenger compartment flooding in their respective class vehicles.

148. The Defendants fraudulently, intentionally, negligently and/or recklessly concealed from Raad and proposed Massachusetts class members defects in class vehicles even though Defendants knew or should have known information concerning these defects was material and central to the marketing and sale of class vehicles to prospective purchasers including Raad and proposed Massachusetts Subclass members. The Defendants intended or should have known that Raad and proposed Massachusetts Subclass members would rely upon misrepresented characteristics of class vehicles and/or misleading descriptions and statements concerning class vehicles as described in this complaint.

149. The Defendants violated § 5 of the Federal Trade Commission Act of 1914, 38 Stat. 719, *codified at* 15 U.S.C. §§ 41-58 *as amended,* and M.G.L. ch. 93A by failing to inform class vehicles owners at the time of purchase that class vehicles incorporated the HVAC Defect and would require additional scheduled maintenance and this added significant additional cost to ownership.

150. As a direct result of these omissions and misrepresentations, Raad and proposed Massachusetts Subclass members purchased class vehicles and sustained economic harm since they purchased vehicles requiring significantly more repairs

and/or preventative maintenance than represented or contemplated. Plaintiff Raad spent approximately $1000. in repairs and/or replacement of the carpeting, underlayment and mold remediation when her passenger compartment flooded as a result of the HVAC Defect after insurance contributions of approximately $8,000. Raad also incurred an additional cost to have an ARINIX® hose tip installed in the vehicle's HVAC evaporator drain hose. Defendants' omissions also diminished the value and durability of class vehicles while also increasing the cost of ownership that was not disclosed to or anticipated by consumers at the time of purchase.

151. The Defendants repeatedly violated M.G.L. ch. 93A on multiple occasions with their continuous course of conduct as described in this complaint and violated § 5 of the Federal Trade Commission Act of 1914, 38 Stat. 719, *codified at* 15 U.S.C. §§ 41-58 *as amended* together with violations of other statutes and regulations set out in this complaint. The wrongful conduct of the Defendants violating M.G.L. ch. 93A occurred within the limitations period set out in the respective statutes and/or the limitations period is tolled by the Defendants' conduct and the discovery rule.

152. As a proximate and direct result of the Defendants' unfair and deceptive business trade practices, Raad and proposed Massachusetts Subclass members purchased class vehicles and sustained an ascertainable loss including but not limited to financial harm as described in this complaint.

153. Raad and proposed Massachusetts Subclass members sustained a foreseeable economic loss directly caused the conduct of the Defendants as described in this complaint.

154. The conduct of the Defendants offends public policy as established by statutes and common law and is unfair, deceptive, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to class vehicles owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

155.   On February 28, 2025, a demand letter pursuant to M.G.L. ch. 93A, § 9 on behalf of Raad and Massachusetts Subclass members was sent to Defendants via certified mail, return receipt requested. Defendants received the M.G.L. ch. 93A, § 9 demand letter on March 5, 2025. A copy of the M.G.L. ch. 93A demand letter and USPS tracking report evidencing delivery are appended to this complaint as Exhibits 1 and 2 respectively. Defendants failed to issue a reasonable settlement of the claims set out in the M.G.L. ch. 93A demand letter within the applicable time period or thereafter.

156.   Wherefore, Raad and the proposed Massachusetts Subclass members demand judgment against the Defendants including multiple monetary damages, interest, costs and attorney's fees as allowed under M.G.L. ch. §93A.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves, and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

i.     an order certifying the proposed class and/or any appropriate subclasses, designating Plaintiffs as named representative of the class, and designating the undersigned as class counsel;

ii.    an award to Plaintiffs and class members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

iii.   an order requiring Defendants to disgorge, for the benefit of Plaintiffs and class members, all or part of the ill-gotten revenue it received from the sale or lease of the class vehicles, or make full restitution thereof to Plaintiffs and class members;

iv.    an award of attorneys' fees and costs, as allowed by law;

v.     an award of pre-judgment and post-judgment interest, as provided by law;

vi.    leave to amend this complaint to conform to the evidence produced at trial; and,

vii.      such other relief as may be appropriate under the circumstances.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues triable by jury.

Dated: April 23, 2025                    Respectfully submitted,

/s/ *S. Martin Keleti*
S. Martin Keleti (Bar #144208)
**KELETI LAW**
9903 Santa Monica Boulevard, Suite 751
Beverly Hills, California 90212-1671
Telephone: 323.308.8489
E-mail: s.martin.keleti@gmail.com

Gary S. Graifman*
Daniel C. Edelman*
**KANTROWITZ GOLDHAMER &
GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, New Jersey 07645
Telephone: 201.391.7000
E-mail: ggraifman@kgglaw.com
           dedelman@kgglaw.com

Thomas P. Sobran*
**THOMAS P. SOBRAN, P.C.**
7 Evergreen Lane
Hingham, Massachusetts 02043
Telephone: 781.741.6075
E-mail: tsobran@sobranlaw.com

*application for *pro hac vice* admission
forthcoming

# EXHIBIT 1

THOMAS P. SOBRAN, P.C.
COUNSELLOR AT LAW
7 EVERGREEN LANE
HINGHAM, MASSACHUSETTS 02043

TELEPHONE (781) 741-6075
FACSIMILE (781) 741-6074
EMAIL tsobran@sobranlaw.com

February 28, 2025

Via Certified Mail No. 7015 0640 0005 2857 4079

Tetsuo Ogawa, President
Toyota Motor North America, Inc.
6565 Headquarters Dr.
Plano, TX 75024

Re: notice of pre-suit litigation

Dear Mr. Ogawa:

Gary S. Graifman and I represent Massachusetts resident Lisa M. Raad ("Raad") who purchased a new 2019 Lexus NX300 bearing VIN JTJBARBZ1K2197853 (the "subject vehicle") from Herb Chambers Lexus of Hingham in December of 2018. Raad sustained economic damages in the amount of approximately $1,000.00 (exclusive of insurance contributions) for replacement of the passenger compartment carpeting, underlayment and sound deadening when the heating ventilation air conditioning ("HVAC") evaporator drain hose clogged as a result of a spider structure. This drain hose blockage caused accumulated water in the HVAC unit to flood the passenger compartment rather than empty outside the vehicle. The purpose of this letter is to provide notice and request relief from Toyota Motor North America, Inc. ("TMNA") and Toyota Motor Sales, U.S.A., Inc. ("TMS") (collectively "Defendants") in accordance with the pre-litigation provisions of Mass. Gen. L. ch. 93A, § 9(3).[1]

Since at least 2013, when TMS conducted a National Highway Traffic Safety Administration ("NHTSA") mandated recall of approximately 800,000 2012-2013 model year Camry and Avalon vehicles, Defendants knew the HVAC evaporator drain hose incorporated in class vehicles is highly susceptible to blockages caused by spiders and other insects residing in the hose and constructing structures. These hose blockages result in water from the HVAC system leaking into the passenger compartment instead of draining outside the vehicle. This water intrusion causes mold, mildew and electrical system issues. Defendants were aware shortly after the NHTSA recall of a low-cost solution to the drain hose blockage issue in the form of an ARINIX® Tip that attaches to the drain hose end which prevents spider structures and resulting blockages from occurring. For some as yet unexplained reason, Defendants failed to inform class vehicle purchasers and existing owners of the availability of the ARINIX® Tip (at a cost of approximately $30.00) to prevent insect structures in the drain hose even though this information was made known to authorized Lexus and Toyota dealers through internal

---

[1] This demand letter is also on behalf of all other residents of Massachusetts who are owners, former owners or lessees or former lessees of vehicles referenced in Lexus Technical Service Informational Bulletin ("TSIB") L-SB-0024-21 and Toyota Technical Service Bulletin ("TSB") T-SB-0080-19 released in July 2021 and July 2019, respectively ("class vehicles").

Tetsuo Ogawa, President
February 28, 2025
Page 2

communications and technical bulletins on multiple occasions since 2014.

Defendants failed to inform and/or warn Ms. Raad and members of the proposed Massachusetts class at the time of purchase that class vehicles incorporated a defect in the HVAC evaporator drain hose which makes the hose highly susceptible to blockages caused by spider webs, other insect structures and debris. These blockages prevent HVAC condensate water from draining outside the vehicle via the drain hose. In the event of a drain blockage, accumulated water floods the passenger compartment. Ms. Raad and the putative Massachusetts sub-class intend to assert Defendants violated ch. 93A by engaging in the following deceptive practices, *inter alia*: (1) representing class vehicles had characteristics that they did not possess; (2) representing class vehicles were of a particular standard when they were of another; and (3) advertising class vehicles with the intent not to sell them as advertised; and, failing to instruct/warn of the consequences of insect and debris clogging the HVAC evaporator drain hose.

Defendants breached express and implied warranties of merchantability and fitness for a particular purpose with respect to class vehicle HVAC evaporator drains. Defendants also negligently and/or intentionally misrepresented and/or omitted to disclose the defective characteristics of class vehicle HVAC systems with respect to maintenance, materials, manufacturing, workmanship, design, performance and durability. Defendants further failed to adequately test class vehicle HVAC systems or disclose to potential purchasers that the system had not been properly tested. This conduct is unfair and deceptive within the context of Massachusetts consumer protection statute ch. 93A.

All owners and lessees of class vehicles sustained ascertainable monetary losses as a result of the propensity of class vehicle HVAC evaporator drain hoses to clog because of defects described in this letter. In addition, as a consequence of these defects, the resale value of class vehicles has been diminished by the specter of unknown future passenger compartment flooding repair costs and vehicle reliability issues.

Ms. Raad and the putative Massachusetts class hereby demand that Defendants remedy this violation of ch. 93A by correcting, repairing, replacing, or otherwise rectifying the HVAC evaporator drain system defect. Specially, Ms. Raad and the Massachusetts class demand that Defendants:

1.    Identify, or make a reasonable effort to identify, all consumers who purchased class vehicles (as defined n.1);

2.    Notify all class vehicle purchasers that, upon their request, TMNA and/or TMS will perform the appropriate correction, repair, replacement, and/or other remedy, such as provide a full refund of the purchase or lease price of the class vehicles and/or of monies paid to repair vehicles damaged as a result of the HVAC evaporator drain hose defect, compensate class vehicle owners for any diminution in value as a result of the hose defect, issue a notification to all class vehicle owners regarding the HVAC evaporator drain hose defect and inform Massachusetts class members corrective measures will be provided for free;

3.    Perform the correction, repair, replacement, or other remedy as set forth above without charge to Massachusetts class members and in a reasonable amount of time; and,

Tetsuo Ogawa, President
February 28, 2025
Page 3

     4.      Cease to engage in unfair and deceptive acts and/or practices described herein.

     In accordance with the provisions of Mass. Gen. L. ch. 93A, § 9(3), in the event Defendants fail to resolve this matter, it is our intention to seek monetary damages, as well as such other remedies afforded to consumers under Massachusetts law.   Chapter 93A provides for multiple damages, attorneys' fees and costs where: (1) a violation of ch. 93A has occurred; and, (2) a reasonable settlement offer is not tendered within thirty (30) days of receipt of the notice to proceed under c. 93A.[2]

     Please feel free to contact me at the above number or email address.  Thank you in advance for your prompt attention to this matter.

                         Very truly yours,

                         Thomas P. Sobran

cc:  Daniel Edelman (*via email*)
     Gary S. Graifman (*via email*)
     S. Martin Keleti (*via email*)
     Evan A. Ormond (*via email*)
     Matthew M. Papkin (*via email*)
     David L. Schrader (*via email*)

---

[2] This letter also serves notice that Defendants breached express and implied warranties with respect to class vehicle HVAC evaporator drains.  Any warranty breach is a violation of ch. 93A.

# EXHIBIT 2

**≡ USPS.COM®**    Quick Tools    Send    Receive    Shop    Business    International    Help    🔍

English    Locations    Support    🏃 Informed Delivery    Register / Sign In

**ALERT: USERS ARE CURRENTLY UNABLE TO SUBSCRIBE TO NEW TEXT AND EMAIL TRACKING UPDATES VIA USPS TRACKING. WE ARE WORKING TO RESOLVE THE ISSUE.**

**ALERT: SEVERE WEATHER AND WINTER STORMS IN THE WESTERN AND NORTH CENTRAL U.S. MAY DELAY FINAL DELIVERY OF YOUR MAIL AND PACKAGES. READ MORE ›**

# USPS Tracking®

Tracking    /    FAQs ›

 **Track Packages Anytime, Anywhere**    Get the free Informed Delivery® feature to receive automated notifications on your packages    **Learn More**

Remove ✕

Feedback

**Tracking Number:**

## 70150640000528574079

📋 Copy    🏃 Add to Informed Delivery

### Latest Update

Your item has been delivered to an agent. The item was picked up at USPS at 9:51 am on March 5, 2025 in PLANO, TX 75024.

Get More Out of USPS Tracking:
🔍 **USPS Tracking Plus®**

✅ **Delivered to Agent**
**Delivered to Agent, Picked up at USPS**
PLANO, TX 75024
March 5, 2025, 9:51 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean?**

Text & Email Updates    ⌄

USPS Tracking Plus®    ⌄

Product Information    ⌄